BEN SILVERMAN, Plaintiff-Appellant, *v.* FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF CHICAGO, Defendant-Appellee.

First District (4th Division)    No. 79-1662

Opinion filed March 12, 1981.

Robert F. Lisco, of Lisco & Field, of Chicago (Sidney Z. Karasik, of counsel), for appellant.

Martin S. Korey, of Stone, Pogrund & Korey, of Chicago (David M. Meister, of counsel), for appellee.

Mr. JUSTICE LINN delivered the opinion of the court:

Plaintiff, Ben Silverman, brought this action in the circuit court of Cook County seeking to recover $15,000 plus interest to date allegedly owed him by defendant, First Federal Savings and Loan Association of Chicago. The money allegedly was owed plaintiff on a matured certificate deposit he had purchased from defendant in the late 1960's. The jury's general verdict was returned in favor of plaintiff. However, the jury also returned an answer to a special interrogatory which the trial court found to be inconsistent with the general verdict. Based on this finding, the trial court entered judgment for defendant notwithstanding the verdict, and plaintiff brought this appeal.

We reverse and remand for a new trial.

The primary controversy at trial was whether plaintiff had ever purchased from defendant a $15,000 certificate of deposit. Plaintiff, who held many other savings accounts and certificate of deposit accounts with defendant, asserted that on or about January 10, 1967, he purchased from defendant a $15,000 certificate, number VR410380, with a one-year maturity date. Defendant contended plaintiff never purchased such a certificate. Defendant alleged it issued a $15,000 certificate to another Ben Silverman, different from plaintiff, on January 10, 1968. Defendant maintained plaintiff was falsely asserting a claim to this certificate. Defendant presented conclusive and uncontradicted evidence that the other Ben Silverman had been issued a $15,000 certificate, number 6-VR-10380, on January 10, 1968, and the other Ben Silverman had been paid the face value of this certificate plus interest in January 1970. It appears from the record that counsel for both plaintiff and defendant assumed that the numbers VR410380 and 6-VR-10380 represented the same account. However, the evidence presented does not conclusively show this.

Plaintiff never introduced his certificate into evidence. He testified he had been robbed in August 1969 and had lost several savings account books and the certificate as a result, and thus he could not produce the certificate. However, to prove he had once possessed such a certificate, plaintiff contended the following.

In early 1968, plaintiff visited defendant's place of business and requested from a savings counselor, William Kennedy, a statement of earnings on all his accounts so he could make out his income tax returns. On April 10, 1968, Kennedy sent a letter to plaintiff in response to his

request. The letter told plaintiff of his earnings on one of his accounts. The letter explained that no earnings statement was being given on some of his certificate of deposit accounts because such statements were only issued in the year of maturity and these accounts had not yet matured. Relating to this, the letter said, "Since your savings certificate number [ ] * * * 6-VR-10380 did not mature in 1967, no earnings statement [is being] issued."

During plaintiff's case-in-chief another savings counselor, Lucille Brandt, was called under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 60). She said that it would have been "good banking practice" for a counselor such as Kennedy to check the signature cards on the accounts before sending such a letter. She said Kennedy must not have done this because the signature card for that certificate showed the signature, name, and address of the other Ben Silverman.

After receiving the letter, plaintiff again visited Kennedy in April 1968. He wanted to find out how much interest had been earned on other accounts not mentioned in the letter. He received from Kennedy an index card with handwritten notations on it. Three accounts were listed on this card. The first line read, "4-10380 — $15,000.00 — Jan. 10, 1968 —$767.19." The $767.19 allegedly referred to the interest earned on the account.

After plaintiff was robbed in August 1969, he went to defendant's place of business and saw another savings counselor, Eugene Bensinger. This meeting took place on September 22, 1969. Plaintiff apparently told Bensinger that he had lost only the one certificate, number VR410380, and he did not tell Bensinger about the other certificate and account books that had been taken. Bensinger had plaintiff fill out a lost certificate affidavit. Bensinger kept this affidavit but gave plaintiff a "receipt for lost certificate affidavit." The lost certificate affidavit was not produced at trial. Nevertheless, defendant stipulated that one had been filled out but contended it was unable to find one in its records. The receipt was admitted into evidence. On it Bensinger had written, "Lost Certificate Affidavit #VR-4-10380 Prin. Balance $15,000.00 for re-issue in 30 days."

Brandt, plaintiff's section 60 witness, testified that it was possibly the duty of a savings counselor, such as Bensinger, to check the signature cards on the account before issuing such a receipt. Bensinger testified that this would not be done until afterwards. Bensinger alleged that his notation on the receipt calling for re-issue of the certificate in 30 days meant only that it would be re-issued if the affiant was found to be the true owner of the account. After his meeting with Bensinger, plaintiff took no further action concerning his account until 1976. Also, the defendant allegedly took no action concerning the lost certificate affidavit that had been filed by plaintiff.

In 1976, plaintiff visited defendant and saw Lucille Brandt. He asked her about his account. When she heard the prefix was VR, she told plaintiff that those kinds of accounts had been phased out in the early 1970's and when defendant was phasing them out it had informed all of its customers to either open new accounts or close the accounts. She asked plaintiff if he had done either of these, to which he answered no. She said she would check for him and she would contact him later.

Two months later, plaintiff saw Brandt again. She told him that the account he had asked about was not his. She showed him a signature card of an account that had been closed in 1970. The number on the card was 6-VR-10380. The signature card was for the other Ben Silverman. She also showed plaintiff a cancelled check for $15,000 which defendant had given to the other Ben Silverman. Plaintiff looked at the endorsement on the check and said the signature was not his. Brandt had plaintiff fill out an affidavit for forged endorsement. Thereafter, defendant refused to pay plaintiff the amount he claimed was owed.

The case went to the jury with the following instructions which are important here. The burden of proof instructions that went to the jury were those submitted by defendant. The first two paragraphs of the burden of proof instructions stated that plaintiff had the burden of proving:

"[T]hat the Plaintiff, Ben Silverman, was the true and rightful owner of Certificate of Deposit Number VR-4-10380, in the principal amount of $15,000.00, issued by Defendant, First Federal Savings and Loan Association of Chicago, on January 10, 1968.

[T]hat the Plaintiff became such true and rightful owner of Certificate of Deposit Number VR-4-10380 by virtue of his purchasing same from the Defendant on the said January 10, 1968, and paying to the Defendant $15,000.00 for such Certificate of Deposit."

The remaining paragraphs of the burden of proof instructions required plaintiff to prove that he had lost the certificate mentioned in the above paragraphs, had demanded payment from defendant, and defendant had wrongfully refused to pay the amount due on that certificate.

During the conference on instructions, plaintiff objected to these instructions because he believed he did not have to prove the date the certificate was issued or the date he purchased it. In particular, plaintiff objected to the inclusion of the date "January 10, 1968" because this contradicted plaintiff's own testimony that he purchased and received the certificate in January 1967. His objection was overruled. Plaintiff also submitted his own burden-of-proof instructions, which eliminated the two paragraphs of defendant's submitted instructions and stated plaintiff only had to prove he was the owner of certificate number VR-4-10380 which was issued by defendant. Plaintiff's instructions were refused.

At the conclusion of the conference on instructions, defendant submitted a special interrogatory it wanted given to the jury. Defendant had not shown plaintiff this interrogatory before the conference. The special interrogatory requested the jury to answer yes or no to the following question:

> "Did Plaintiff own Certificate of Deposit #VR410380 issued by Defendant on January 10, 1968 by virtue of having deposited $15,000 with Defendant on January 10, 1968, to acquire said Certificate of Deposit?"

At the conference, plaintiff made only a general objection to this interrogatory. His objection was overruled and the interrogatory was submitted to the jury.

The jury returned a general verdict for the plaintiff. However, the jury answered the interrogatory, "No." At the bottom of the special finding a juror had written, "We believe this man deposited his money in 1967."

Thereafter, defendant moved for judgment notwithstanding the verdict. The trial court granted this motion because it found the answer to the special interrogatory was inconsistent with the general verdict. The trial court also expressed its belief that the general verdict was against the manifest weight of the evidence.

Subsequently, plaintiff moved to set aside the judgment, to enter judgment on the general verdict, or in the alternative to grant a new trial. In this motion, plaintiff alleged that the burden of proof instructions and the special interrogatory were improperly submitted to the jury because no reference should have been made to any date concerning when the certificate of deposit was issued or purchased by plaintiff or when plaintiff deposited his money with defendant. Plaintiff contended that the date the certificate was issued and the date plaintiff deposited his money were not ultimate facts that had to be proven by plaintiff. Plaintiff also specifically claimed as error that the date "January 10, 1968" was improperly included in the instructions and the special interrogatory.

The trial court denied plaintiff's motion and this appeal followed.

OPINION

Before discussing the specific issue presented, we find it necessary to point out what we believe plaintiff was obligated to prove. Plaintiff had to prove that he purchased and received a certificate of deposit in 1967, not 1968. He did not have to prove he purchased the certificate issued in 1968 because he was not claiming any rights to that certificate.

Defendant's defense was that it issued a certificate to the other Ben Silverman in 1968 and that this was the only certificate issued to a Ben Silverman. Though defendant conclusively showed that it issued a

certificate to the other Ben Silverman in 1968, it did not conclusively show that it was the only certificate issued to a Ben Silverman. Though defendant presented a strong case for that proposition, plaintiff presented evidence to show that another certificate was issued in 1967. For example, the certificate account number is variously referred to as VR410380, 4-10380, and 6-VR-10380. It is unclear from the record whether these numbers referred to the same account or different accounts. Also, plaintiff allegedly received an index card in April 1968 which said that his interest earned on his certificate number 4-10380 was $767.19. Though the date on this card is January 10, 1968, the meaning of this date is unclear. Defendant contended it could only refer to the date the certificate was issued, but there was evidence presented to show the interest rate for the kind of certificate in question was six percent per year. If the date referred to the date of issuance, how could a $15,000 certificate earn $767.19 in interest at six percent per year in only three months? Thus, the date may have referred to the date of maturity, which was one year after the date of issuance.

Additionally, plaintiff filed a lost certificate affidavit in September 1969. Under defendant's theory this affidavit represented a false claim to the other Ben Silverman's account. However, defendant took no action with regard to this affidavit. This lack of action supported plaintiff's case because a jury might have believed that a savings and loan association would take some action if it had received a false affidavit.

Finally, plaintiff himself testified he purchased the certificate in 1967, and on three occasions the bank acted in a manner tending to show plaintiff owned such a certificate. Plaintiff was sent a letter in April 1968 stating he owned such a certificate. He received an index card in the same month stating he owned such a certificate. He received a receipt for lost certificate affidavit in September 1969 indicating he owned such a certificate. Defendant's employee, Brandt, testified that it was "good banking practice" to check signature cards before taking any of the above action. The defendant claimed that its employees simply failed to make the proper inspection, or, in the case of the lost certificate affidavit, such an inspection would have come after the receipt for lost certificate affidavit was issued. Nevertheless, it was just as reasonable to believe that the proper inspections were made and that plaintiff had a valid signature card on record relating to his account.

Hence, plaintiff presented evidence to show he had purchased a certificate in 1967. Defendant presented a strong case for the proposition that only one certificate was issued and that it was issued to the other Ben Silverman in 1968, but defendant did not conclusively prove that the 1968 certificate was the only certificate issued to a Ben Silverman. Nevertheless, at defendant's behest, burden of proof instructions were submitted to the

jury stating plaintiff had to prove he purchased and received the 1968 certificate. These instructions implicitly created a conclusion that only one certificate existed. Based on these instructions, the only possible verdict that could have been rendered, if the jury obeyed the instructions, was one for defendant because the evidence undoubtedly showed that plaintiff did not purchase the 1968 certificate. Despite this, the jury returned a verdict for plaintiff.

■■ The specific issue raised in this case is whether the special finding is inconsistent with the general verdict. Although plaintiff may have waived any objection to the form of the interrogatory by making only a general objection to it at the instructions conference (*Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 385 N.E.2d 664), even so, the special finding will be deemed to control the general verdict only if it is inconsistent with it. (*Struthers v. Jack Baulos, Inc.* (1977), 52 Ill. App. 3d 823, 368 N.E.2d 148.) The special finding is obviously inconsistent with the burden of proof instructions. However, plaintiff specifically objected to these instructions and preserved the alleged error in those instructions in his post-trial motion. The burden of proof instructions were improper because they required plaintiff to prove he purchased and received the 1968 certificate. As we have already noted, plaintiff had to prove he purchased and received a certificate in 1967. The special finding would be consistent with any verdict that was based on the actual issues in the case because whether plaintiff had purchased and received the 1968 certificate was completely immaterial to the outcome of the case. Thus, the special finding would not control any verdict that was based on the actual facts plaintiff had to prove. Accordingly, it was improper to enter a judgment based on the special finding.

■■ The only remaining issue is whether the verdict should now be deemed valid and judgment entered on that verdict. As we previously observed, the only possible verdict the jury could have returned based on the instructions given, if it had obeyed those instructions, was one for defendant. The jury obviously ignored the instructions. The instructions given had nothing to do with the actual issues in the case. The jury rendered a verdict based on what it guessed plaintiff had to prove. It cannot be determined whether the jury guessed correctly. If we were to give any weight to the note appended to the special finding, we could surmise that some of the jurors believed plaintiff had deposited his money in 1967. However, we cannot allow such a note to determine the outcome of this case. (See *Ervin v. Neil* (1980), 81 Ill. App. 3d 5, 400 N.E.2d 667.) Also, plaintiff had to prove more than the fact that he deposited his money in 1967. He also had to prove he received a certificate in 1967, that he lost that particular certificate, and that defendant refused to pay the amount owed on that certificate. The jury was never informed of these

issues. We also note that the trial court expressed the opinion that it believed the general verdict was against the manifest weight of the evidence. Hence, considering all of the foregoing, we believe the proper remedy in this case is to reverse and remand for a new trial.

Reversed and remanded.

ROMITI, P. J., and JIGANTI, J., concur.