GARY LaPOOK, Indiv. and as Adm'r of the Estate of Mary Patricia La-
Pook, and Adm'r of the Estate of Baby LaPook, Plaintiff-Appellant, v. THE
CITY OF CHICAGO, Defendant-Appellee.

First District (5th Division)   No. 1—88—3808

Opinion filed March 28, 1991.—Rehearing denied April 25, 1991.

Terrence E. Leonard, Chartered, of Chicago, for appellant.

Kelly R. Welsh, Corporation Counsel, of Chicago (Ruth M. Moscovitch and Michelle A. Hutchinson, Assistant Corporation Counsel, of counsel), for appellee.

JUSTICE GORDON delivered the opinion of the court:

Plaintiff filed a three-count complaint seeking damages for the wrongful death of his wife and unborn child. The second count, alleging that the treatment by Chicago fire department paramedics was wilful and wanton and proximately caused the deaths, was the only count which went to the jury. The jury returned a verdict for the plaintiff, but also answered a special interrogatory which the trial court found to be inconsistent with the general verdict. Upon defendant's motion, the court then entered judgment on the special interrogatory. For the following reasons, we affirm the judgment of the trial court.

On October 12, 1978, Mary Patricia LaPook, age 32 and seven months pregnant, collapsed in the lobby of the Brunswick Building, 69 West Washington in Chicago. Chicago fire department paramedic Unit 41, Timothy Timm and Frank Howe, arrived on the scene at 2:12 p.m. Paramedic Timm was the officer in charge.

Paramedic Timm testified that he had little independent recollection of the incident, but based on his recollections and the "run sheet" which he filled out for each call, he testified as to the following facts: Mrs. LaPook was unconscious when he and paramedic Howe arrived on the scene. Mrs. LaPook's blood pressure and pulse rate were both taken and both measured zero. Her respiration was 16, slightly below normal. Mrs. LaPook was also given oxygen. They attached a cardiac monitor to her which indicated a normal sinus rhythm of 80. Based upon these readings, Timm determined that Mrs. LaPook's condition was possibly shock caused by hypovolemia (low blood volume). In accordance with the paramedics' standing medical orders for shock due to trauma and/or blood loss, an intravenous solution (IV) was given to Mrs. LaPook.

Timm and Howe continued to monitor Mrs. LaPook's vital signs. She regained consciousness and informed them she was seven months pregnant and had a history of an enlarged spleen. She also com-

plained of pain in her shoulders. At 2:30 p.m., Unit 45 consisting of paramedics Staerk, Kruse and Ingram arrived on the scene. After speaking to Timm, they left, returning to base at 2:45 p.m.

Also, at 2:30 p.m., Mrs. LaPook's respiration dropped to zero and her heart went into sinus tachychardia (abnormally fast heart beat). At 2:32 p.m., Timm called Northwestern Memorial Hospital. Standard procedure required that once the hospital was contacted, the paramedics must follow its instructions, not their standing medical orders. The hospital ordered a second IV which was given at 2:40 p.m.

At 2:48 p.m., Mrs. LaPook was transported to the hospital. Paramedic Howe testified that during the ride, she again complained of pain and asked to be rolled on her side. At 2:54 p.m., less than one minute before she reached the hospital, she went into cardiac arrest. Timm and Howe performed CPR on her as they transported her from the ambulance to the emergency room.

Dr. Robert Franzen, the attending emergency room physician, testified that he and the emergency room staff attempted to revive Mrs. LaPook. Her heart was stimulated with a cardiac facing wire, a heart monitor was attached, and she was given two more IV solutions, three units of whole blood and some albumin. In spite of their efforts, Mrs. LaPook died at 3:32 p.m. The cause of her death was intra-abdominal bleeding with irreversible hypovolemia. Approximately 20 minutes later, after a cesarean operation was performed, Baby La-Pook was pronounced dead.

Two experts testified on behalf of plaintiff. Both were of the opinion that the paramedics should have started two IVs immediately and Mrs. LaPook should have been transported to the hospital more quickly. All that the paramedics did could have been done in 10 to15 minutes and Mrs. LaPook should then have been immediately transported to the hospital. It was apparent that Mrs. LaPook was in critical condition and needed expert medical help fast. Both opined that had the paramedics acted more quickly, Mrs. LaPook's chances for survival would have been greater.

Two experts testified on behalf of defendant. Both believed that the paramedics had not deviated from the expected prehospital standard of care in Chicago in 1978. Both also believed that Mrs. LaPook's enlarged spleen complicated by cirrhosis of the liver and pregnancy was an extremely rare condition and that she had little or no chance of survival, no matter how quickly the paramedics had acted.

During the jury instruction conference, the defendant tendered the following two special interrogatories:

"1. Was Paramedic Thomas Howe guilty of wilful and wanton misconduct on October 12, 1978?

If and only if yes, go on to answer the next question:

2. Was such wilful and wanton misconduct a proximate cause of the deaths?"

And:

"1. Was Paramedic Timothy Timm guilty of wilful and wanton misconduct on October 12, 1978?

If and only if yes, go on to answer the next question:

2. Was such wilful and wanton misconduct a proximate cause of the deaths?"

The plaintiff objected to the form and substance of the interrogatories, stating that Timm and Howe should not be singled out because they were not named defendants. He suggested using the term "paramedics." The plaintiff also stated that the element of proximate cause should be included in the special interrogatory in one question. The court agreed with the plaintiff, suggesting that there should be one interrogatory asking whether "either or both were guilty of wilful and wanton misconduct," and refused the instructions. The defendant amended the instructions pursuant to the plaintiff's suggestion and later tendered the following special interrogatory to the court:

"Were the paramedics guilty of wilful and wanton conduct that contributed to or proximately caused the deaths of the decedents?"

The court asked plaintiff if he would like to make any specific objections to the instruction. He responded that he had no specific objection, only a general one as to the necessity of giving a special interrogatory in this case.

During the course of its deliberation, the jury sent the following questions to the judge:

"Your Honor, we would like clarification of the following points:

1. In the attached document, is the word 'knowing' a reference to the paramedics' medical experience and expertise? That is, based on their previous experience and expertise, does this mean that they should have recognized the seriousness of Mrs. LaPook's situation, based their actions thusly, knowing do [sic] otherwise result in her possible death?

Or,

2. Does 'knowing' mean that they acted maliciously to endanger her life, therefore, stood by and did nothing?

3. We believe we heard both you and either both or one of the judges [sic] mention that we should not consider the word 'wilful and wanton' to include malicious intent on the part of the paramedics. Is this true? That is, we should not construe the paramedics' actions as purposely to cause Ms. LaPook's harm or injury?

4. If we were to rule for the plaintiff against the defendant, could the paramedics be charged with her murder and tried as criminals? Or is this something which should not affect our decision?

5. Do the words 'conscious disregard' mean the paramedics did not act appropriately based on the situation they encountered with Mrs. LaPook on 10/12/78 and on their medical experience and expertise? Again, if their actions were inappropriate, we should not construe their actions to be the result of malicious intent? Is this true?"

Later the jury sent the following question to the judge:

"Question. Your Honor Genesen, regarding the page that states: 'Were the Paramedics guilty of wilful and wanton conduct that contributed to or proximately caused the death of the decedents' does the verdict automatically define how this page is filled out? That is, a finding for the plaintiff automatically represents a 'yes' on this page."

During the discussion as to how to handle these questions, the court and the attorneys determined to give the jury further instructions defining wilful and wanton. The plaintiff tendered the following definition from *Schneiderman v. Interstate Transit Lines, Inc.* (1946), 394 Ill. 569, 583, 69 N.E.2d 293:

"A wilful and wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care."

The defendant objected to that definition on the basis that *Schneiderman* was not a medical malpractice case. It tendered the following definition of wilful and wanton from *Stogsdill v. Manor Convalescent Home, Inc.* (1976), 35 Ill. App. 3d 634, 660, 343 N.E.2d 589:

"In order to constitute willful and wanton misconduct the injury must either have been intentionally inflicted or produced

by acts so grossly negligent as to exhibit a reckless disregard for the safety of others."

The plaintiff objected to this definition because it introduced to the jury the term "grossly negligent," which had not been previously defined. In determining to read both definitions to the jury, the trial court stated, "I think that that way if I'm in error, I'm in error on both sides."

The court first read the additional definition of wilful and wanton submitted by the plaintiff. It then prefaced the reading of the one submitted by the defendant by saying, "The other, which is going to be typed, and is perhaps another way of saying it, reads as follows," which plaintiff claims drew attention to that definition.

As to the question regarding charging the paramedics for Mrs. LaPook's murder, the plaintiff argued that it should be answered plainly and simply "No." He believed that to do otherwise would leave a question in the minds of the jurors as to whether it was probable. Sympathy for the paramedics might then affect the jury's decision. The defendant argued that the question of murder was irrelevant to the jury's determination and it should simply be told "it should not affect your decision." The trial court determined, over plaintiff's objection, to inform the jury that "normally civil verdicts do not affect criminal prosecutions under normal circumstances, and, therefore, this is something which should not affect your decision."

As to the later question regarding the special interrogatory, the trial court suggested that it would inform the jurors "no, it's not automatic." The plaintiff objected to that and suggested the trial court inform the jury that it had to decide each and every verdict form based on the evidence and the law. The defendant had no objection to that as long as the word "separate" was used. The court informed the jury "my answer will be not necessarily. You should decide each verdict separately."

The jury returned a general verdict in favor of the plaintiff in the aggregate sum of $900,000. The jury also answered the special interrogatory in the negative. The defendant moved for judgment based on the special interrogatory. The trial court entered judgment on the special interrogatory, ruling that its answer was inconsistent with the jury's general verdict and not against the manifest weight of the evidence and thus controlling.

The plaintiff filed a motion to reconsider and a post-trial motion. The trial court denied both motions and plaintiff timely appealed.

Opinion

On appeal, plaintiff argues that the answer to the special interrogatory did not dispose of all the issues in the case and is therefore not inconsistent with the general verdict. Plaintiff alleges that by using the plural "paramedics," the defendant excluded the possibility that only one paramedic was guilty of wilful and wanton misconduct. In the alternative, plaintiff argues that the answers the court gave to the jury's questions during deliberations impermissibly confused the jury and denied him a fair trial.

Defendant urges that the answer to the special interrogatory is inconsistent with and therefore controlling of the verdict. Further, defendant contends that plaintiff has waived any objections to the special interrogatory because he did not specifically object to it at the instructions conference and in fact suggested the language which defendant incorporated in the draft ultimately given to the jurors. Finally, defendant argues that the answers which the trial court gave to the jury's questions were proper and thus plaintiff was not denied a fair trial.

We turn first to the issue of whether plaintiff has waived his objections to the answer to the special interrogatory. It is beyond dispute that a failure to specifically object to a special interrogatory when proferred at the instructions conference will ordinarily waive any claim of error in the giving of that special interrogatory. This is particularly true in this instance where plaintiff himself suggested the alternate language which defendant substituted in the draft of the special interrogatory finally given. See *Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 387, 385 N.E.2d 664.

Plaintiff, however, does not purport to rest his appeal upon the contention that it was error to have given the special interrogatory to the jury. Rather, plaintiff urges that having given an interrogatory which does not fully cover an ultimate issue, the resultant answer was not inconsistent with the general verdict and cannot therefore control the verdict. This contention was not waived by the plaintiff notwithstanding his failure to specifically object to the interrogatory when proferred and notwithstanding his affirmative support of the final language at the instruction conference. Even if plaintiff is bound by the answer to the special interrogatory because he failed to challenge it before it was given, his failure to object will not serve to extend or otherwise modify the plain meaning and scope of the answer. See *Struthers v. Jack Baulos, Inc.* (1977), 52 Ill. App. 3d 823, 368 N.E.2d 148, where the court stated as follows:

"While plaintiff was bound by the answer to the interrogatory because he failed to specifically challenge it at the conference on instructions, he can be bound only as to those issues actually decided by the jury's special verdict." (52 Ill. App. 3d at 827.)

Accord *Silverman v. First Federal Savings & Loan Association* (1981), 94 Ill. App. 3d 274, 418 N.E.2d 864, stating:

"Although plaintiff may have waived any objection to the form of the interrogatory by making only a general objection to it at the instructions conference [citation], even so, the special finding will be deemed to control the general verdict only if it is inconsistent with it." 94 Ill. App. 3d at 280.

■■ ■ We must therefore now look to the merits of plaintiff's contention that the special interrogatory is not inconsistent with the general verdict. The purpose of a special interrogatory is not to instruct the jury, but to act as a check upon the deliberations of the jury as to an ultimate question of fact. (*Shaheed v. Chicago Transit Authority* (1985), 137 Ill. App. 3d 352, 362, 484 N.E.2d 542.) If the special interrogatory is inconsistent with the general verdict, the special interrogatory will control. (Ill. Rev. Stat. 1989, ch. 110, par. 2–1108; *Shaheed*, 137 Ill. App. 3d at 362.) Where the special interrogatory does not cover all of the issues submitted to the jury and a reasonable hypothesis exists to permit the general verdict to be construed consistently with the special interrogatory, they cannot be said to be absolutely irreconcilable and the special finding will not control. (*Wicks v. Cuneo-Henneberry Co.* (1925), 319 Ill. 344, 350, 150 N.E. 276; *Devine v. Federal Life Insurance Co.* (1911), 250 Ill. 203, 206, 95 N.E. 174; *Smilgis v. City of Chicago* (1981), 97 Ill. App. 3d 1127, 1130, 423 N.E.2d 1288.) If the special findings do not cover all of the issues presented to the jury and are not solely determinative of the case, a reasonable hypothesis consistent with the general verdict exists. The general verdict, then, responds to the issues not covered by the special interrogatory. Because those issues may be controlling as to the jury's decision, the statute does not apply. *Cohen v. Sager* (1971), 2 Ill. App. 3d 1018, 1019, 278 N.E.2d 453.

Here plaintiff argues that in using the plural "paramedics," the jury was led to believe that it had to find more than one of them guilty of wilful and wanton conduct. Yet to find the city liable, only one of the paramedics had to be guilty of wilful and wanton conduct, not more than one of them.

■ Terms that are of common usage are to be understood in their conventional sense (*Saldana*, 74 Ill. 2d at 388; *Larson v. Com-*

*monwealth Edison Co.* (1965), 33 Ill. 2d 316, 323, 211 N.E.2d 247) and need not be defined or explained in instructing the jury. (*De Rosa v. Albert F. Amling Co.* (1980), 84 Ill. App. 3d 64, 75, 404 N.E.2d 564.) The question is, then, how ordinary people acting as jurors would understand the use of the plural. *Mudd v. Goldblatt Brothers, Inc.* (1983), 118 Ill. App. 3d 431, 439, 454 N.E.2d 754.

■■ ■ As is the case with instructions, special interrogatories should be construed in light of what an ordinary person would understand them to mean, and not on the basis of mere abstract mathematical analysis as an exercise in symbolic logic. (See *Hulke v. International Manufacturing Co.* (1957), 14 Ill. App. 2d 5, 142 N.E.2d 717.) Moreover, while the court may not look to the contextual evidence to construe the meaning of a special interrogatory (*Wicks*, 319 Ill. at 350), a special interrogatory should be read together with the jury instructions to determine how the interrogatory was understood by the jury and whether there was any confusion. (See *Vuletich v. Bolgla* (1980), 85 Ill. App. 3d 810, 817, 407 N.E.2d 566 (stating "[s]pecial interrogatories must be considered together with and in light of other instructions of the court"). Accord *Bruske v. Arnold* (1969), 44 Ill. 2d 132, 136-37, 254 N.E.2d 453; *Smilgis*, 97 Ill. App. 3d at 1130.

Here even without reference to the instructions, it would be contrary to common understanding for the jurors to read the special interrogatory so as to elicit a finding which would pertain only to all of the paramedics in their entirety as opposed to any single one of the paramedics, even though a technical analytical construction would permit such an interpretation. It is manifest that the plaintiff's attorney himself did not consider the interrogatory in that light when he suggested substituting the generic term "paramedics" in place of defendant's original draft which avoided any possible ambiguity by designating each paramedic under his proper name in a separate interrogatory.

■■ Whatever technical basis might otherwise exist to support the analytical construction urged by the plaintiff substantially dissipates when the interrogatory is read in the context of the jury instructions. Here the "vicarious liability" instruction given without objection stated as follows:

"The Defendant is a Municipal Corporation and can act only through its employees. Any wilful and wanton act or omission

by its employees is the wilful and wanton act or omission of the Municipal Corporation."[1]

Clearly in this instruction, the term "its employees" refers to any single employee. Thus any wilful or wanton act by any employee is attributable to the City. When the special interrogatory is read in conjunction with this instruction, it leaves no reasonable basis upon which to predicate that the jurors would have construed the special interrogatory as requiring misconduct on the part of each and every paramedic rather than by any single one of them. Accordingly, plaintiff's contention that the jury's answer to the special interrogatory is not inconsistent with the verdict and therefore should not have controlled the verdict must fail.

■■■ We next consider plaintiff's contention that the trial court's answers to the jury's questions denied him a fair trial. It is within the trial court's discretion whether to respond to a jury's request for clarification. (*Kingston v. Turner* (1987), 115 Ill. 2d 445, 463, 505 N.E.2d 320.) However, the trial court should make every effort to clear up any confusion in the minds of the jurors. (*Hunter v. Smallwood* (1975), 28 Ill. App. 3d 386, 391, 328 N.E.2d 344.) Even where an instruction is erroneous, a reversal is not warranted unless it clearly misled the jury and resulted in prejudice to the appellant. *Amstar Corp. v. Aurora Fast Freight* (1986), 141 Ill. App. 3d 705, 710, 490 N.E.2d 1067.

■■■ Plaintiff argues that the trial court erred in using defendant's definition of wilful and wanton because it introduced the term "grossly negligent" which had not been previously defined to the jury. Plaintiff further contends that the trial court exacerbated that error by its prefatory remarks drawing special attention to the defendant's definition. Whether "negligent" had or had not been previously defined and whether "grossly" is a term of common understanding are questions we need not reach. The jury had been given three compatible definitions of the term "wilful and wanton misconduct." Collectively they provided a correct and comprehensible definition the term. There is no reason to presume that the jury was confused or misled

---

[1]It should be noted that while the oral transcript of the jury instructions is the one printed in the text, the written instruction on this point contained in the record and apparently submitted to the jury is even clearer. It provides as follows:

"The Defendant is a Municipal Corporation and can act only through its employees. Any wilful and wanton act or omission of an employee serving within the scope of his or her employment is the wilful or wanton action or omission of the Municipal Corporation."

by the trial court's effort to provide additional clarification. We therefore see no prejudice to the plaintiff.

Plaintiff's next argument concerns the court's answer to the jurors' question as to whether the paramedics could be charged with murder and tried as criminals. Specifically, the plaintiff contends that the court's failure to answer unequivocally "No" failed to remove the issue from the jurors' minds, causing confusion, creating sympathy for the paramedics and denying plaintiff his right to a fair trial.

■■■ ■ Were every inconsistency between answers to special interrogatories and general verdicts held to be evidence of confusion sufficient to justify reversal, the entire purpose of the special interrogatory would be defeated. The special interrogatory serves a control function over a general verdict. (*Sommese v. Maling Brothers, Inc.* (1966), 36 Ill. 2d 263, 267, 222 N.E.2d 468, 470.) The legislature recognized that a jury might return inconsistent answers, and provided that in such an event, the special interrogatory controls over a general verdict. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1108.) The Illinois Supreme Court has stated that this rule is based upon a recognition of the jury's ability to more clearly understand a particularized special interrogatory than a general verdict which is a composite of all the questions in a case. *Borries v. Z. Frank, Inc.* (1967), 37 Ill. 2d 263, 266, 226 N.E.2d 16, 19.

■■■ ■ Plaintiff, however, contends that the court's refusal to respond to the jury's question about possible murder charges against the paramedics with an absolute "No" caused the jurors to answer the special interrogatory in the negative out of fear of hurting the paramedics. This contention does not question or dispute the factual accuracy of the trial court's response. A reviewing court may set aside a jury determination only if it is clearly satisfied that the jury's finding was occasioned by passion or prejudice or is wholly unsupported by the evidence. (*Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 623, 126 N.E.2d 836, 841.) Here plaintiff would require us to speculate that sympathy for the paramedics was the basis for the jury's answer to the special interrogatory. As long as there is a plausible basis for the result reached by the jury, we should not engage in such speculation or conjecture. The jury's answer to the special interrogatory is not inconsistent with the evidence. The trial court, in entering judgment on the special interrogatory, found it was not against the manifest weight of the evidence. The record on review amply supports that finding. As a result, we are not persuaded that the jury's finding was occasioned by sympathy for the paramedics as the plaintiff contends, nor can we say that it is unsupported by the evidence.

■■■ Finally, we look to whether the court erred when it responded to the jurors' questions "does the verdict automatically define how this page [the special interrogatory] is filled out? That is, finding for the plaintiff automatically represents a yes on this page?" by saying "[m]y answer will be not necessarily. You should decide each verdict separately." To inform the jury that the special interrogatory and general verdict must be consistent constitutes reversible error. (*Sommese v. Maling Brothers, Inc.* (1966), 36 Ill. 2d 263, 268, 22 N.E.2d 468; *Chase v. Morgan Cab Co.* (1971), 2 Ill. App. 3d 203, 206, 276 N.E.2d 393.) Here, the court merely told the jurors that the general verdict form did "not necessarily" define how the special interrogatory was to be completed. The court did not, as plaintiff asserts, tell them, in effect, that they could be completed inconsistently. While the court, in its discretion, could have declined to respond to the jury's question, the answer given was not incorrect.

Plaintiff also argues that in telling the jury to decide each verdict separately, the court was in clear contradiction of a previous instruction which informed the jury to consider the instructions as a whole. Plaintiff had suggested that the court should inform the jury that it should "decide each and every verdict form based on the evidence and the law." Although the court told the jury to "decide each verdict separately" rather than using plaintiff's phrase, we believe that the two terms carry the same general connotation and the trial court did not abuse its discretion in so answering.

Based on the foregoing, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LORENZ, P.J., and MURRAY, J., concur.