ROBERT BLAKEY, Plaintiff-Appellant and Cross-Appellee, v. GILBANE BUILDING CORPORATION, Defendant-Appellee and Cross-Appellant (Johnson Contracting Company, Inc., Third-Party Defendant-Appellee and Cross-Appellant).

Fourth District   No. 4—98—0295

Opinion filed March 15, 1999.—Rehearing denied April 26, 1999.

Joseph R. Curcio and Thomas W. Stewart (argued), both of Joseph R. Curcio, Ltd., of Chicago, for appellant.

Daniel F. Konicek (argued), Michelle L. Adams, and Mary Lisa Kamins, all of Connelly & Schroeder, all of Geneva, for appellee Gilbane Building Corporation.

David F. Buysse (argued), of Garofalo, Schreiber & Hart, Chartered, of Chicago, for appellee Johnson Contracting Company.

JUSTICE COOK delivered the opinion of the court:

Plaintiff, Robert Blakey, was injured October 10, 1989, when he fell while working on a severely pitched roof on the bio-tech laboratory at the University of Illinois. Blakey complained of severe pain in his left arm and a tingling sensation in the fingers of his left hand. He was ultimately diagnosed as having suffered a dislocated left shoulder and reflex sympathetic dystrophy in that shoulder. Blakey was employed by third-party defendant, Johnson Contracting Company, Inc. (Johnson). The construction manager on the project was defendant Gilbane Building Corporation (Gilbane).

Blakey filed a two-count complaint against Gilbane, alleging Gilbane failed to provide him a "safe, suitable and proper temporary support," in violation of the Structural Work Act (Ill. Rev. Stat. 1987, ch. 48, pars. 60 through 69), and that Gilbane was guilty of negligence. Gilbane then filed a third-party complaint against Johnson, alleging that if Gilbane were found liable, Gilbane was entitled to contribution from Johnson commensurate with Johnson's relative degree of fault under the Joint Tortfeasor Contribution Act (740 ILCS 100/0.01 *et seq.* (West 1996)). Blakey originally filed suit in Cook County, but the case was transferred to Champaign County on account of *forum non conveniens. Blakey v. Gilbane Building Co.*, 264 Ill. App. 3d 626, 637 N.E.2d 442 (1994).

Jury trial commenced October 7, 1996, and on October 16, 1996, the jury returned an itemized verdict finding Blakey's total damages to be $1,690,000, and attributing the percentage of negligence or fault 20% to Blakey, 40% to Gilbane, and 40% to Johnson. The jury was also given the following special interrogatory: "On the date of the accident and at the time and place of the accident in question, was the sole proximate cause of the injury to the plaintiff the conduct of some person or persons other than the defendant Gilbane?" The jury, inconsistent with its verdict, answered that interrogatory in the affirmative.

On November 1, 1996, the circuit court entered judgment on the special interrogatory in favor of defendants, resulting in a zero award for Blakey. Blakey then filed a posttrial motion, attaching the affidavit of a juror who stated that the jury had clearly concluded that "Gilbane was guilty" and should pay, along with Johnson, the percentage listed. Eventually a similar letter, signed by all the jurors (there were only 11), was filed. On January 24, 1997, the circuit court ordered a new trial, stating:

> "I have concluded that the jury instructions as a whole, including the verdict form and special interrogatory were objectively not sufficiently clear and understandable to permit the judgment as entered to stand. The length, complexity, and interrelationship of the instructions and verdict forms do not render them sufficiently comprehensible."

Gilbane and Johnson petitioned for leave to appeal from the order granting a new trial, pursuant to Supreme Court Rule 306(a)(1) (166 Ill. 2d R. 306(a)(1)), but this court denied the petition (Nos. 4—97—0116, 4—97—0121). That denial did not address the merits of the case and so does not foreclose Gilbane and Johnson from raising any issues concerning the decision to grant a new trial. See *Koenig v. National Super Markets, Inc.*, 231 Ill. App. 3d 665, 667-69, 596 N.E.2d 1329, 1331-32 (1992).

On September 5, 1997, three days before the new trial was to begin, Gilbane filed a motion for sanctions, alleging that Blakey had failed to disclose, during his deposition and in answers to interrogatories, that he had been hospitalized between November 27 and December 2, 1984, at Memorial Medical Center in Springfield, with a complaint of injury to his left shoulder and back. Gilbane, in its brief, states that it learned of this information about three weeks before the new trial date, and "it was not until counsel for [d]efendant received an offer from an investigation company for a free investigation that information regarding the 1984 injury was discovered." Gilbane asked that the court bar all plaintiff's medical testimony and other evidence and for other sanctions as the court deemed appropriate.

The trial court allowed the parties to present evidence when the motion for sanctions was heard, three days after it was filed, but Blakey presented no evidence. On September 8, 1997, the trial court granted the motion for sanctions and dismissed the complaint, stating (1) it would be very costly and time consuming to redo the significant amount of work that had been done, to incorporate information regarding the 1984 injury; (2) what was involved here "is absolutely, plainly, clearly, unequivocally a false answer to an interrogatory answer"; (3) the information went to the heart of the claim for injury, which was a complicated claim, and "might just as easily have been a critical piece of information to experts of all varieties as to be as inconsequential as urged by plaintiff's counsel." On September 12, 1997, the circuit court entered a written order, stating:

> "This Court hereby finds that the failure to disclose this information was material and for reasons stated for the record and after having considered all available possible sanctions, concludes that the only appropriate sanction is to dismiss the complaint with prejudice."

Blakey filed a motion to reconsider. Blakey also filed an affidavit stating that he had forgotten about the 1984 stay at Memorial Medical Center, his left shoulder was not injured in the 1984 accident, he did not consider the workers' compensation claim filed on his behalf in connection with the 1984 accident to be a personal injury "lawsuit," and he was not aware that his attorney had filed a third-party lawsuit separate and apart from his workers' compensation claim. Blakey also attached an affidavit from Dr. F. William Schroeder, who had treated him at Memorial in 1984, advising that Blakey had no significant injury to his left shoulder and was treated only for complaints related to his lower back. Dr. Joseph Schrodt, who had treated Blakey subsequent to 1987, stated in an affidavit that nothing concerning Blakey's 1984 hospitalization at Memorial would change his opinion

regarding the injury to Blakey's left shoulder sustained on October 10, 1989. On March 20, 1998, the circuit court considered the affidavits, and reconsidered its ruling, but again determined that dismissal with prejudice was appropriate.

Blakey appeals the March 20, 1998, order dismissing the case with prejudice. Gilbane and Johnson cross-appeal the court's January 24, 1997, order granting a new trial.

## I. THE SANCTION OF DISMISSAL

■ Supreme Court Rule 219(c) provides that the court may enter "such orders as are just," where a party "unreasonably fails to comply" with the discovery rules, or "fails to comply with any order entered under these rules," including an order that the offending party's action be dismissed with prejudice. 166 Ill. 2d R. 219(c). The decision to impose a particular sanction is within the discretion of the trial court; only a clear abuse of discretion justifies reversal. *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112, 120, 692 N.E.2d 286, 289 (1998) (a destructive testing case). We do not defer, however, to a trial court's factual findings made on the basis of affidavits. *Cf. Majca v. Beekil*, 183 Ill. 2d 407, 701 N.E.2d 1084 (1998) (summary judgment). A just order of sanctions under Rule 219(c) is one which, to the degree possible, ensures both discovery and a trial on the merits. *When* imposing sanctions, the court's purpose is to coerce compliance with discovery rules and orders, not to punish the dilatory party. *An* order of dismissal with prejudice or a sanction that results in a default judgment is a drastic sanction to be invoked only in those cases where the party's actions show a deliberate, contumacious, or unwarranted disregard of the court's authority. *Shimanovsky*, 181 Ill. 2d at 123, 692 N.E.2d at 291.

■ To determine if the trial court abused its discretion, a reviewing court must look to the criteria upon which the trial court relied in making its determination of an appropriate sanction. *Shimanovsky*, 181 Ill. 2d at 123, 692 N.E.2d at 291. The factors a trial court is to use in determining what sanction, if any, to apply are (1) the surprise to the adverse party; (2) the prejudicial effect of the proffered testimony or evidence; (3) the nature of the testimony or evidence; (4) the diligence of the adverse party in seeking discovery; (5) the timeliness of the adverse party's objection to the testimony or evidence; and (6) the good faith of the party offering the testimony or evidence. *Shimanovsky*, 181 Ill. 2d at 124, 692 N.E.2d at 291.

On April 20, 1995, Blakey gave the following answers to interrogatories.

"9. Q. During the five years immediately prior to the date of said

occurrence, had you been confined in a hospital, treated by a physician or x-rayed for any reason other than personal injury? If so, give the name and address of each such hospital, physician, technician or clinic, the approximate date of each such confinement or service and state, in general, the reason for such confinement or service.

A. In approximately 1988, I had hernia surgery at Memorial Medical Center, 800 North Rutledge, Springfield, Illinois.

10. Q. Have you suffered any personal injury prior to the date of said occurrence? If so, state whom, where and in general, how you were so injured and describe in general the injuries suffered.

A. No.

12. Q. Have you ever filed any other suit for your own personal injuries? If so, state the court in which filed, the year filed and the title and docket number of said case.

A. No."

On June 26, 1995, Blakey gave the following answer in his discovery deposition.

"Q. Have you ever injured your left shoulder before the accident?
A. No, Sir."

The records of Memorial Medical Center indicate that Blakey was treated on November 27, 1984. The records contain the following history.

"H & P: Patient is a 32[-]year[-]old man with chief complaint of pain in the lower back and down both legs.
HISTORY OF PRESENT ILLNESS: This is a 32[-]year[-]old white male who states that while working at a sheet metal job [he] sustained injury to his left shoulder and lower back. Patient states that a 300[-]lb. piece of duct piping fell on his left shoulder[,] which doubled him over in pain. Patient states he had immediate pain in his lower back as well as down both of his legs. Patient states he has been on bedrest at home for the last week but the pain has not resolved. Patient was seen in Dr. Schroeder's office at which time it was felt as though the patient would benefit from bedrest and hospitalization. Patient is admitted at this time for conservative treatment. Patient states he has numbness and tingling down both legs, down the posterior aspect of his thighs as well as his calfs and down radiating into his toes.
IMPRESSION: 1. Acute lumbosacral strain
2. May possibly have a minor fracture in the lower vertebra."

It appears that Blakey's deposition answer was accurate, that he did not injure his left shoulder in the 1984 accident. Blakey should have disclosed the 1984 accident in response to the interrogatories. Blakey was hospitalized for five days at that time and was off work for

perhaps four months. In his brief, however, Blakey notes that, between October 10, 1989, and the time he answered the interrogatories, he had been at seven different hospitals with three separate surgeries and had incurred medical expenses of approximately $80,000. There was a period of over 11 years, with all of the intervening medicals, between the 1984 accident and the answering of the interrogatories. The trial court chose not to address the failure to disclose "the 86 L case," the third-party action filed, along with the workers' compensation claim, as a result of the 1984 accident. Gilbane criticizes the affidavits presented by Blakey on his motion for reconsideration as untimely and as "notable for their improbability." The unrebutted affidavits, however, which were considered by the circuit court, raise at least a question of fact whether Blakey was acting in good faith and whether there was "clearly" a false answer to an interrogatory.

■ Blakey argues it is possible for defendants to be afforded discovery and for there to be a trial on the merits. *Shimanovsky*, 181 Ill. 2d at 123, 692 N.E.2d at 291. Defendants can take additional evidence depositions or their witnesses may be called at trial. Blakey and his witnesses at trial can be cross-examined. The cost of additional discovery may be assessed against Blakey as a sanction. Defendants do not dispute these assertions. Instead they argue that sanctions must be proportionate to the gravity of the violation. The cases cited by defendants all involve repeated misconduct and conduct clearly more reprehensible than that involved in this case. *Ostendorf v. International Harvester Co.*, 89 Ill. 2d 273, 282, 433 N.E.2d 253, 257 (1982) (test results assertedly not available; assertions either outright falsehoods or half-truths equivalent to outright lies); *Harris v. Harris*, 196 Ill. App. 3d 815, 824, 555 N.E.2d 10, 16 (1990) ("a repeated indifference to the court's orders"); *In re Estate of Soderholm*, 127 Ill. App. 3d 871, 878-79, 469 N.E.2d 410, 416 (1984) (repeated lying at depositions and destroying physical evidence). The conduct in this case cannot be said to show that "deliberate, contumacious or unwarranted disregard of the court's authority" that is required before a dismissal with prejudice may be imposed. *Shimanovsky*, 181 Ill. 2d at 123, 692 N.E.2d at 291. Punishment is not the goal of a discovery sanction, and this is not a case where a party's actions, even if inadvertent, have made a fair trial impossible.

The trial court was uncertain whether the 1984 accident, which apparently caused no injury to Blakey's left arm, was "a critical piece of information" or whether it was "inconsequential as urged by plaintiff's counsel." Unlike the destructive testing cases, however, it is possible to find out whether the information not disclosed here was critical or inconsequential. Blakey's expert, Schrodt, has already said

that it was inconsequential. Any prejudice to defendants was in the form of lost time or lost money, which can be remedied with a sanction short of dismissal.

After considering all the factors set out in *Shimanovsky*, the criteria upon which the trial court relied, and the affidavits considered by the trial court, we conclude that the trial court clearly abused its discretion in ordering dismissal with prejudice as a sanction. We reverse and remand for the circuit court to consider a lesser sanction and to set this case for trial.

## II. THE SPECIAL INTERROGATORY

■ Section 2—1108 of the Civil Practice Law provides: "[t]he jury may be required by the court, and must be required on request of any party, to find specially upon any material question or questions of fact submitted to the jury in writing." 735 ILCS 5/2—1108 (West 1996); *cf.* 28 U.S.C. app. Fed. R. Civ. Proc. 49(b) (1994) (not mandatory that special interrogatory be submitted). When the special finding is inconsistent with the general verdict, the special finding controls. 735 ILCS 5/2—1108 (West 1996). A special interrogatory is not proper unless it relates to an ultimate fact in the case. A special interrogatory on an evidentiary fact would not necessarily be inconsistent with the general verdict and could not be held to control the general verdict. See *Ross v. Aryan International, Inc.*, 219 Ill. App. 3d 634, 650-51, 580 N.E.2d 937, 947 (1991). The reason the special finding controls is that a jury more clearly understands a particularized special interrogatory than a composite of all the questions in a case. A special finding upon which a jury presumably has more intensively focused its attention should prevail over an inconsistent general verdict. See *Borries v. Z. Frank, Inc.*, 37 Ill. 2d 263, 266, 226 N.E.2d 16, 19 (1967).

In the present case the general verdict, which required the jury to determine the exact percentage of Gilbane's fault, was more particularized than the special interrogatory. It would appear that the jury more intensively focused its attention on the general verdict than on the special interrogatory. The special interrogatory is a venerable common law device, but since *Alvis v. Ribar*, 85 Ill. 2d 1, 421 N.E.2d 886 (1981), which abolished contributory negligence as a bar and substituted comparative negligence, it has been unusual for the jury to render a verdict that is simply "a composite of all the questions in a case," a verdict that, for example, states "We, the Jury, find for the plaintiff and against the defendant." There was no benefit to be gained from the special interrogatory in this case.

■ The argument could be made that special interrogatories frequently do not achieve their purpose and often disrupt a trial with

a result not understood by the jury and not expected by the court or the parties. The possibility of an unintended, unreasoned result is made more likely by the fact that the court and counsel are severely restricted in their discussion of a special interrogatory. The function of a special interrogatory is to act as a check upon the deliberations of the jury, to test the general verdict against the jury's conclusions as to the ultimate facts. It would interfere with that function if the jury were informed of the source of the interrogatory or informed of the necessity of conforming the answer to the special interrogatory with its general verdict. *Sommese v. Maling Brothers, Inc.*, 36 Ill. 2d 263, 266-67, 222 N.E.2d 468, 470 (1966); *cf.* 9A C. Wright & A. Miller, Federal Practice & Procedure § 2509, at 196-98 (2d ed. 1995) (hereinafter Federal Practice & Procedure) (preferable approach under Federal Rule 49(b) is that it is not error to allow the jury to know the legal effect of its answers). It is proper, however, to argue to the jury that a special interrogatory should be answered in accordance with the evidence. *Batteast v. Wyeth Laboratories, Inc.*, 137 Ill. 2d 175, 185-86, 560 N.E.2d 315, 319-20 (1990); *cf.* 9A Federal Practice & Procedure § 2509, at 197 (even so, the jury is likely to conclude what parties want the answer to be). In this case none of the parties mentioned the special interrogatory in their closing arguments. In a jurisdiction where no comment is allowed on the special interrogatory it is very important that the special interrogatory be carefully worded.

■ We reject Gilbane's argument that the only question before this court is whether the special interrogatory, considered alone, was submitted in proper form, not whether the jury instructions and special interrogatory, taken as a whole, were confusing. A special interrogatory should be read together with the jury instructions to determine how the interrogatory was understood by the jury and whether any confusion resulted. See *LaPook v. City of Chicago*, 211 Ill. App. 3d 856, 865, 570 N.E.2d 708, 713 (1991); *Betts v. Manville Personal Injury Settlement Trust*, 225 Ill. App. 3d 882, 901-02, 588 N.E.2d 1193, 1206 (1992); see also *Bruske v. Arnold*, 44 Ill. 2d 132, 136-37, 254 N.E.2d 453, 456 (1969) (improper to ask whether plaintiff was negligent without asking whether such negligence was a proximate cause; interrogatory, however, not prejudicial when taken together with instructions).

Gilbane states that it modeled its special interrogatory on the one approved in *Snyder v. Curran Township*, 281 Ill. App. 3d 56, 666 N.E.2d 818 (1996). The beginning language of that interrogatory, "on the date of the accident and at the time and place of the accident in question," has been criticized. A special interrogatory asking whether the plaintiff is the sole proximate cause of the accident can be confus-

ing where the plaintiff is the only "actor" and the alleged negligence of the defendant occurred at some earlier time. See *Snyder*, 281 Ill. App. 3d at 67-68, 666 N.E.2d at 826 (Garman, J., dissenting). At any rate, Gilbane's interrogatory differs from that in *Snyder*. The interrogatory in *Snyder* asks whether the conduct of a particular person, the plaintiff, was the sole proximate cause of the accident. Gilbane's interrogatory asks whether the conduct of unidentified persons "other than the defendant Gilbane" was the "sole proximate cause" of the accident. In this case, the accident had to have been caused by Blakey, Gilbane, or Johnson. Gilbane's special interrogatory would have been simpler and more direct if it had asked "was the conduct of Gilbane a proximate cause of the injury to plaintiff?" It was misleading for the instructions to ask whether the conduct of Gilbane was "a proximate cause" but for the special interrogatory to ask whether the conduct of others than Gilbane was the cause. The term "proximate cause" was defined for the jury ("it need not be the only cause, nor the last or nearest cause"), but the term "sole proximate cause" was not.

When the jury was asked whether it found for Blakey and against Gilbane it answered "yes" under the Structural Work Act and "yes" under negligence. When the jury was asked whether it found for Gilbane and against Johnson on the contribution claim it answered "yes." The special interrogatory was constructed so that if the jury answered "yes," that answer would be inconsistent with all the previous "yes" answers.

■ A special interrogatory that is in proper form must be submitted to the jury. However, a special interrogatory that is repetitive, misleading, confusing, or ambiguous is not in proper form. *Snyder*, 281 Ill. App. 3d at 60-61, 666 N.E.2d at 821-22. Where the trial court finds that a special interrogatory was not properly given, or that the jury's answer to the special interrogatory was contrary to the manifest weight of the evidence, the trial court may order a new trial. *Borries*, 37 Ill. 2d at 265-66, 226 N.E.2d at 18-19 (no authority to enter judgment in accordance with general verdict). The trial court may not, however, conclude from the mere fact of inconsistency between the general verdict and the special interrogatory that the jury was confused in entering the special interrogatory. To so hold would "patently nullify the pertinent provision" of section 2—1108 of the Civil Practice Law that the special interrogatory controls in cases of inconsistency. *Borries*, 37 Ill. 2d at 266-67, 226 N.E.2d at 19 (under the language of section 2—1108, then section 65 of the Civil Practice Act (Ill. Rev. Stat. 1965, ch. 110, par. 65), however, the court may have some discretion not to enter judgment in accordance with the special interrogatory).

■ Johnson argues that in determining whether a special finding is inconsistent with a general verdict the evidence itself should not be considered and that a court may not look to the contextual evidence in a case to construe the meaning of a special interrogatory. The fact that the court would have decided differently on the evidence is not enough to show the jury was confused by the special interrogatory, but it is not correct that the court must ignore the evidence in determining whether there was confusion. A special interrogatory that is inadequate because it questions only an evidentiary fact cannot, however, be aided by looking at the evidence. *Wicks v. Cuneo-Henneberry Co.*, 319 Ill. 344, 350-51, 150 N.E. 276, 279 (1925).

■ A jury may not impeach its verdict by affidavit or testimony that shows the motive, method, or process by which the verdict was reached. *Chalmers v. City of Chicago*, 88 Ill. 2d 532, 537, 431 N.E.2d 361, 363 (1982). Of course, in this case the verdict was not impeached by the affidavits; it was the special interrogatory that was impeached. It may be possible to receive affidavits to show mistakes of a clerical nature, particularly where there are unanimous affidavits from all jurors. *Chalmers*, 88 Ill. 2d at 538-39, 431 N.E.2d at 364-65. In *Chalmers*, the jury assessed damages in the amount of $1705.99 and punitive damages in the amount of $13,000, but answered in a special interrogatory that ·defendant was not guilty of willful and wanton conduct. Eleven of the twelve jurors later signed affidavits stating the $1,705.99 was for medical expenses, and they mistakenly placed the $13,000 in the punitive damages blank, intending to award damages for disability and pain and suffering. The court held this was not a clerical mistake but "the jury's misapprehension of the instructions or the effect of their findings." *Chalmers*, 88 Ill. 2d at 539, 431 N.E.2d at 364. The testimony or affidavits of jurors cannot be used to show that the jury misunderstood the instructions or the law, the effect of a particular finding, or the effect of its verdict. "The meaning and effect of the verdict must be judged from its terms alone." *Chalmers*, 88 Ill. 2d at 539, 431 N.E.2d at 364-65. Again, the jury was not attempting to impeach the special interrogatory in *Chalmers*, but the verdict form.

■ We understand the trial court's ruling to be that the special interrogatory was not in proper form, that the special interrogatory was "repetitive, misleading, confusing, or ambiguous," when considered in connection with the other instructions. *Snyder*, 281 Ill. App. 3d at 59, 666 N.E.2d at 821; see also *LaPook*, 211 Ill. App. 3d at 865, 570 N.E.2d at 713; *Betts*, 225 Ill. App. 3d at 901-02, 588 N.E.2d at 1206. In such a situation, the trial court has the authority to grant a new trial. *Borries*, 37 Ill. 2d at 265-66, 226 N.E.2d at 18-19.

■ It is generally stated that a court's ruling on a motion for a

new trial will not be reversed except in those instances where it is affirmatively shown that it clearly abused its discretion. In determining whether the trial court abused its discretion, the reviewing court should consider whether the jury's verdict was supported by the evidence and whether the losing party was denied a fair trial. *Maple v. Gustafson*, 151 Ill. 2d 445, 455-56, 603 N.E.2d 508, 513 (1992). Particular deference should be given the trial court's decision to grant a new trial when that decision supports, rather than overturns, the jury's verdict.

█ In this case, there was more than an inconsistency between the answer to the special interrogatory and the general verdict. See *Borries*, 37 Ill. 2d at 265-66, 266 N.E.2d at 18-19; see also *Freeman v. Chicago Transit Authority*, 33 Ill. 2d 103, 105-06, 210 N.E.2d 191, 193-94 (1965). Having determined that the special interrogatory was improper, the trial court could easily conclude that the jury was confused and that Blakey would be denied a fair trial if judgment were entered on the special interrogatory.

Finally, defendants argue that Blakey waived his objections by not sufficiently objecting to the special interrogatory and by not asking the jury to explain its verdict before it was discharged. Blakey did object to the special interrogatory:

> "Well, I am going to object to the special interrogatory in light of the fact we have an itemized verdict and this singles out the sole proximate cause of the injury to the plaintiff as a defense to the case. I don't think that sole proximate cause should be allowed to be a defense, because the plaintiff has the burden of proving proximate cause. If we fail in that regard, then the verdict should be for the defendant so I don't think that this special interrogatory should be given."

Blakey's arguments that the special interrogatory was repetitive, incapable of achieving its purpose in a case where there was to be an itemized verdict/apportionment of damages, had potential only for doing harm, and that the question before the jury was not "sole proximate cause" but "proximate cause" were well taken. A court may properly grant a new trial to correct misleading instructions, considering the fairness of the trial to all parties and whether substantial justice was accomplished, even if neither party objected to those instructions. *Smith v. City of Evanston*, 260 Ill. App. 3d 925, 933, 631 N.E.2d 1269, 1275-76 (1994).

Defendants cite *Chalmers*, where the jury arguably wrote its disability and pain and suffering verdict on the line for punitive damages. The court held that if there was an error, it should have been discovered prior to the jury's discharge, at which point the trial judge

could have taken such action as might have been appropriate. *Chalmers*, 88 Ill. 2d at 540-41, 431 N.E.2d at 365. The error there was in the verdict form, not the special interrogatory. It is not clear what action a trial court can take when it believes the jury was confused in answering a special interrogatory. Under the cases cited above, the court could not tell the jury that the special interrogatory had to be answered consistently with the general verdict. Perhaps the only thing the trial court could have done was to send the jurors back and ask them to think about it some more. That would not have been productive, given the confusing nature of the interrogatory.

Accordingly, we affirm the judgment of the circuit court granting a new trial and remand; we reverse the judgment dismissing the case and remand for consideration of a sanction other than dismissal.

Affirmed in part and reversed in part; cause remanded with directions.

McCULLOUGH and MYERSCOUGH, JJ., concur.