MICHAEL BONAVIA *et al.*, Plaintiffs-Appellants, v. ROCKFORD FLOTILLA 6—1, INC., Defendant-Appellee (Rockford Park District, Defendant).

Second District   No. 2—03—0338

Opinion filed April 27, 2004.

Michelle L. Moore, of Law Office of Michelle L. Moore, of Wheaton, for appellants.

Karen L. Kendall, of Heyl, Royster, Voelker & Allen, of Peoria, and Kevin J. Luther and Brad A. Antonacci, both of Heyl, Royster, Voelker & Allen, of Rockford, for appellee.

JUSTICE BYRNE delivered the opinion of the court:

On July 4, 1999, plaintiff Michael Bonavia suffered personal injuries after he slipped and fell while walking to his pontoon boat that was docked at defendant Rockford Flotilla 6—1, Inc. (the Flotilla). Michael and his wife, Mary, filed a four-count complaint alleging that the Flotilla and defendant Rockford Park District negligently caused Michael's injuries and Mary's loss of consortium. Rockford Park District was dismissed from the action and is not a party to this appeal. The Flotilla moved for summary judgment, arguing that it owed no duty to warn or protect Michael because he slipped on a natural accumulation of algae. The trial court agreed and granted the Flotilla summary judgment. Plaintiffs appeal, arguing that the Flotilla was not entitled to a judgment as a matter of law because it owed and

breached a duty to Michael under section 343 of the Restatement (Second) of Torts. Restatement (Second) of Torts § 343 (1965). We affirm.

## FACTS

In early June 1999, plaintiffs purchased a pontoon boat and piloted it to the Flotilla, where they docked it. Defendant Rockford Park District leases the premises to the Flotilla, which in turn rents dock space to patrons like plaintiffs who store boats on the Rock River. The Flotilla features a concrete ramp that descends from shore into the water, allowing patrons to launch their boats. A sign near the ramp states "Caution, Slippery When Wet." Immediately adjacent to the launch ramp is a concrete step, described by the parties as "the approach," which sits about four to eight inches higher than the ramp. The approach is approximately five-by-five feet and serves as the entry to a pier leading to wooden docks that float on the river. Before the date of the incident, Michael had visited the boat at the Flotilla four times but had not launched the boat from the dock.

Michael testified that, at approximately 6 p.m. on July 4, 1999, plaintiffs went to the Flotilla, where their pontoon boat was docked. The weather was clear, and the sun had not yet set. When Michael arrived, he noticed that the approach was overgrown by weeds and other vegetation. Moreover, some boards on the pier were broken or missing. The portion of the pier immediately adjacent to the approach was covered with something that appeared to be "outdoor carpeting." The concrete launch ramp was cracked and strewn with vegetation, twigs, and gravel. On July 4, 1999, the water level was high, reaching near the top of the launch ramp and reducing the space available for accessing the approach.

Michael made at least one or two trips from his car to the boat, transporting items such as lawn chairs. On his final trip, Michael carried a portable toilet measuring 22-by-15-by-20 inches and weighing 35 to 40 pounds. Michael walked along the top edge of the launch ramp until he reached the concrete approach. As he stepped onto the approach, he lost his balance and fell on his back. The left side of his back struck the approach and the right side of his back struck the launch ramp. After he fell, Michael noticed algae on the boat launch ramp.

Michael experienced severe pain throughout his torso, back, and legs; and for three minutes he could not stand. A neighboring boater eventually helped Michael to his feet and carried the toilet to Michael's boat. Michael did not immediately seek medical attention because he did not wish to disrupt his family's Independence Day festivities.

Michael lay down on the boat and ate a small meal, and the family launched the boat to watch the fireworks. Michael summoned paramedics five hours later because his pain had not subsided. Because the paramedics could not cross the approach with their gurney, Michael's son piloted the boat to the launch ramp, where Michael was placed in an ambulance. Michael was hospitalized for four days with broken ribs and a pneumothorax. He also developed diabetes.

The record contains four photographs of the approach, launch ramp, and pier. Camera-generated date stamps on the prints indicate that one photo was shot four weeks after the incident and the remaining three photos were shot eight weeks after the incident. The water level is higher in the photo taken four weeks after the incident, but the more recent photos suggest that the premises and surrounding vegetation were otherwise unchanged.

On June 30, 2000, plaintiffs sued the Flotilla and Rockford Park District for Michael's injuries and Mary's loss of consortium. The counts directed toward Rockford Park District were dismissed without prejudice. The remaining counts alleged that the Flotilla was negligent. Plaintiffs argued that the Flotilla owed a duty to "maintain its piers in a reasonably safe condition, and not create any hazardous conditions on the ramp in front of the boat launch in such a way so as to cause an unreasonable risk to those individuals lawfully thereon," including Michael. Plaintiffs alleged that the Flotilla breached that duty by knowingly (1) creating or allowing a hazardous and unsafe condition on the launch ramp, (2) failing to warn Michael of the algae growth and high water level, (3) failing to barricade the slippery area, and (4) allowing the launch ramp to fall into disrepair.

On April 9, 2002, the Flotilla moved for summary judgment, arguing that it owed Michael no duty to prevent his injuries because he slipped on a natural accumulation of algae. The Flotilla cited Michael's own deposition testimony in which he admitted that the waves washed the algae onto the launch ramp where he fell. The trial court granted the Flotilla summary judgment, and this timely appeal followed.

## ANALYSIS

Plaintiffs allege two theories of premises liability in this case: (1) the Flotilla was negligent for failing to remove the algae or erect barricades and warnings on the launch ramp, and (2) the Flotilla was negligent for allowing bushes and other vegetation to block the approach to the extent that Michael could access the pier only by crossing the slippery launch ramp. Plaintiffs concede that the slippery condition of the launch ramp was open and obvious.

■ In a negligence action, the plaintiff must provide sufficient

facts showing the existence of a duty owed by the defendant, a breach of that duty, and an injury proximately resulting from the breach. *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 411 (1991). Where the plaintiff fails to provide facts "from which the court could infer the existence of a duty," summary judgment for the defendant is appropriate. *Vesey*, 145 Ill. 2d at 411. The existence of a duty is a question of law to be determined by the court. *Vesey*, 145 Ill. 2d at 411.

Plaintiffs criticize the trial court's reasons for granting the Flotilla summary judgment. However, in all appeals from the entry of summary judgment, we conduct a *de novo* review of the evidence in the record. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113 (1995). Therefore, a review of the rationale employed by the trial court will not necessarily dispose of the case.

■ Summary judgment is appropriate where the pleadings, affidavits, depositions, and admissions on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1998); *Bier v. Leanna Lakeside Property Ass'n*, 305 Ill. App. 3d 45, 50 (1999). "Summary judgment is a drastic means of resolving litigation and should be allowed only when the right of the moving party is clear and free from doubt." *Bier*, 305 Ill. App. 3d at 50. "Therefore, where reasonable persons could draw divergent inferences from the undisputed material facts or where there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact." *Espinoza*, 165 Ill. 2d at 114.

A triable issue of fact exists where there is a dispute as to material facts or where the material facts are undisputed, but reasonable persons might draw different inferences from those facts. *In re Estate of Hoover*, 155 Ill. 2d 402, 411 (1993). Plaintiffs concede that there is no question of material fact, but they argue that summary judgment is inappropriate because reasonable people could draw different inferences from the facts. We disagree.

### 1. Open and Obvious Danger

■ Plaintiffs argue that the Flotilla owed and breached a duty to minimize or at least warn of the risk of injury Michael suffered. The duty owed by property owners to invitees is one of reasonable care under the circumstances regarding the state of the premises or acts done or omitted on them. 740 ILCS 130/2 (West 2000); *Ward v. K mart Corp.*, 136 Ill. 2d 132, 147 (1990). According to section 343A of the Restatement (Second) of Torts, cited with approval in *Ward*, 136 Ill. 2d at 151, "[a] possessor of land is not liable to his invitees for physi-

cal harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Restatement (Second) of Torts § 343A(1) (1965). For example, reason to expect harm from a known or obvious danger may arise "where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." Restatement (Second) of Torts § 343A(1), Comment *f*, at 220 (1965). The former example set forth in the Restatement has come to be known as the "distraction exception" to the obvious risk principle and the latter example is known as the "deliberate encounter exception." *Sollami v. Eaton*, 201 Ill. 2d 1, 15 (2002). Accordingly, the existence of an open and obvious condition is not a *per se* bar to a finding of legal duty on the part of a premises owner or occupier. *Sollami*, 201 Ill. 2d at 15. Thus, a possessor of land should guard against harm to the invitee, despite the obviousness of the danger, if either the "distraction exception" or the "deliberate encounter exception" applies in a given case. *Sollami*, 201 Ill. 2d at 15-16.

■ Because plaintiffs concede that the slippery condition of the launch ramp was open and obvious, we hold that the Flotilla owed him no duty to (1) remove the algae, (2) warn of the algae, or (3) remove the overgrown vegetation on the approach, unless one of the exceptions to the obvious risk principle applies.

### a. Distraction Exception

■ The distraction exception to the obvious risk principle is illustrated in *Ward*. There, the plaintiff walked into a concrete post located just outside a customer entrance to a store. At the time of his injury, the plaintiff had exited the store carrying a large mirror he had purchased and he failed to see the post. The plaintiff filed a negligence action against the defendant based upon a theory of premises liability. Citing section 343A of the Restatement (Second) of Torts, the supreme court found that, despite the obviousness of the concrete post, it was reasonably foreseeable to the store owner that customers might momentarily forget the post's presence when exiting the store or might become distracted while carrying large, bulky items purchased in the store. *Ward*, 136 Ill. 2d at 153. Emphasizing that the burden on the defendant to exercise reasonable care to protect its customers from

the risk of colliding with the post was slight, the court suggested that "a simple warning" might well have removed the unreasonableness of the danger posed by the post. *Ward*, 136 Ill. 2d at 156.

This case is factually distinguishable from *Ward*. Here, Michael had visited his boat four times during the month preceding the incident. Moments before the injury, Michael had made at least one or two trips from his car to the boat, each time crossing the launch ramp on the way to the pier. Most importantly, the Flotilla had posted a sign near the launch ramp, stating "Caution, Slippery When Wet." The sign is precisely the type of simple warning that *Ward* suggested would remove the unreasonableness of the danger. Unlike the customer in *Ward* who momentarily forgot the existence of the concrete post, it was unforeseeable that Michael would disregard the posted warning and forget that he was crossing a potentially slippery slope. We conclude that the distraction exception does not apply to the obvious risk principle here.

### b. Deliberate Encounter Exception

Plaintiffs argue that the Flotilla had reason to expect that Michael would proceed to encounter the known and obvious danger because, to a reasonable person in his position, the advantages of doing so would outweigh the apparent risk. Our supreme court has noted that the deliberate encounter exception has most often been applied in cases involving some type of economic compulsion. *Sollami*, 201 Ill. 2d at 16, citing *LaFever v. Kemlite Co.*, 185 Ill. 2d 380, 392 (1998) (defendant could have reasonably foreseen that plaintiff would deliberately walk on slippery material in course of performing his job duties), and *Ralls v. Village of Glendale Heights*, 233 Ill. App. 3d 147, 155-56 (1992) (it was reasonably foreseeable that construction workers would use the shortest path to door of building on work site, even though the path was snow-covered and slippery). Because the supreme court found that the deliberate encounter exception did not apply in *Sollami*, it did not reach the question of whether the exception applies only to the kind of situations involved in *LaFever* and *Ralls*. *Sollami*, 201 Ill. 2d at 16.

Plaintiffs argue that, similar to the injured employees in *LaFever* and *Ralls*, Michael was economically compelled to carry his portable toilet across the slippery slope because there was no other means to access the dock he rented from the Flotilla. We disagree. *Hastings v. Exline*, 326 Ill. App. 3d 172 (2001), is most factually similar to this case and provides a better developed analysis of the deliberate encounter exception. In *Hastings*, the plaintiff visited her mother-in-law, the defendant, at the mobile home where she lived. The home had

front and rear doors. Covered wooden stairs led to the front door. Stairs of metal mesh led to the rear door. The defendant generally locked the front door, preferring that her guests use the rear door so as not to track debris into her home. Before the injury, the defendant had noticed that the mesh stairs leading to the rear door became slippery when wet. The defendant covered the stairs with a carpet remnant. The plaintiff admitted that the remnant also appeared unsafe when wet and she was unable to say that the remnant made the stairs any less hazardous. Before passing through the rear door on the date of the incident, the plaintiff noticed that the rear stairs were wet. The plaintiff exited the home through the rear door, slipping and injuring herself on the metal steps. The plaintiff used the rear door out of deference to the defendant's general preference and also because it was more convenient to reach her car that way. She slipped because the carpet was slick, not because the carpet itself had moved appreciably. The defendant had left a clear path to her front door, but the front door had remained locked. The plaintiff sued for negligence, and the trial court granted the defendant summary judgment. *Hastings*, 326 Ill. App. 3d at 173.

On appeal, the Appellate Court, Fourth District, noted that the danger of slipping on the rear stairs was open and obvious and that the distraction exception did not apply. *Hastings*, 326 Ill. App. 3d at 173-74. Acknowledging that the facts were similar to those in *Ralls*, the appellate court emphasized that *Ralls* neglected to consider "why a reasonable man in the plaintiff's position would have found more advantage in hazarding the icy incline than in simply taking the alternate route." *Hastings*, 326 Ill. App. 3d at 176. The court held that (1) the defendant owed no duty because the plaintiff unreasonably concluded that the advantages of proceeding on the slick stairs outweighed the apparent risk and (2) the plaintiff assumed the risk of injury. *Hastings*, 326 Ill. App. 3d at 176.

■ Generally, a plaintiff who voluntarily assumes a risk of harm arising from a defendant's negligent conduct cannot recover for such harm. Restatement (Second) of Torts § 496A (1965). A plaintiff voluntarily assumes a known risk when he fails to leave or chooses to remain in the area of risk under circumstances manifesting his willingness to accept it (unless contrary to public policy). Restatement (Second) of Torts § 496C (1965). And while the fact that a defendant has left the plaintiff no reasonable alternative may negate voluntariness on the plaintiff's part (Restatement (Second) of Torts § 496C (1965)), the presence of a known alternative would seemingly establish the plaintiff's voluntary assumption. *Hastings*, 326 Ill. App. 3d at 176. The *Hastings* court held that the plaintiff offered no proof that a

reasonable person in her position would have found a greater advantage in using the rear door than in using the front door, given the respective conditions of the two exits. *Hastings*, 326 Ill. App. 3d at 177.

Hastings cited *Smithers v. Center Point Properties Corp.*, 318 Ill. App. 3d 430 (2000), as authority for applying the assumption of risk doctrine to cases that involve the deliberate encounter exception. In *Smithers*, the court held that the deliberate encounter exception did not abrogate the fireman's rule, a version of the assumption of risk doctrine. *Smithers*, 318 Ill. App. 3d at 441-42.

■ Here, the approach, as depicted in the photographs in the record, was only partially obscured by vegetation. Plaintiffs do not allege that the photographs, taken several weeks after the injury, do not accurately portray the vegetation at the time of the incident. We conclude that, because Michael could have crossed the side of the approach that was not covered by vegetation, he had an alternative route for reaching the pier. The risk posed by crossing the approach was much less than the risk posed by crossing the launch ramp. The existence of a less risky alternative establishes Michael's voluntary assumption. See *Hastings*, 326 Ill. App. 3d at 177 ("[t]heoretically, the case might be different had [the plaintiff] provided evidence that the front exit presented an equal (or worse) peril"). We conclude that Michael assumed the risk of injury when he proceeded across the launch ramp while carrying the heavy portable toilet. Therefore, the deliberate encounter exception does not apply to the obvious risk principle in this case.

## 2. Balancing Test

■ Determining that the open and obvious doctrine applies does not end the inquiry regarding duty in a negligence case. Plaintiffs urge us to impose duties on the Flotilla to remove the algae, warn of the algae, and remove the overgrown vegetation on the approach so pedestrians need not cross the launch ramp to access the pier. In determining whether a duty exists, a court should consider the following factors: (1) the reasonable foreseeability of injury, (2) the reasonable likelihood of injury, (3) the magnitude of the burden that guarding against injury places on the defendant, and (4) the consequences of placing that burden on the defendant. *Sollami*, 201 Ill. 2d at 17.

■ Because we are unaware of an Illinois premises liability case involving slippery algae or moss and because Michael slipped on a portion of the ramp that was wet, we refer to analogous cases involving slippery water, snow, or ice. See *Burns v. Addison Golf Club, Inc.*, 161 Ill. App. 3d 127, 130-31 (1987) (appellate court relied upon natural ac-

cumulation rule in case where the plaintiff tripped on an exposed tree root on the defendant's golf course). It is well settled that a property owner has no duty to remove a natural accumulation of snow and ice from his property unless he voluntarily undertakes to remove the snow and ice and the removal results in an unnatural accumulation. *Russell v. Village of Lake Villa*, 335 Ill. App. 3d 990, 994 (2002). Here, the Flotilla did not undertake to remove the algae that grew and washed upon the launch ramp. Moreover, the Flotilla did not undertake to remove the vegetation that allegedly prevented access to the approach. Therefore, the Flotilla was not liable for failing to remove either the algae (see *Russell*, 335 Ill. App. 3d at 994) or the vegetation (see *Burns*, 161 Ill. App. 3d at 131 (the exposed roots of a tree on a golf course are a natural condition of the premises)).

The application of the four-factor test confirms this result. The law does not impose a duty to warn of open and obvious conditions unless the distraction exception or deliberate encounter exception applies. *Sollami*, 201 Ill. 2d at 17. Therefore, the reasonable foreseeability factor weighs against finding the existence of a duty here. Second, the law generally considers the likelihood of injury slight when the condition is open and obvious, because it is assumed that persons encountering the potentially dangerous condition of the land will appreciate and avoid the risks. *Sollami*, 201 Ill. 2d at 17. Because the risks involved here would have been open and obvious to a reasonable person in Michael's position, an injury from slipping on the launch ramp was unlikely.

Third and fourth, *Ward* illustrates that the magnitude of the burden of imposing the duty and the consequences of such a burden are slight. However, the record indicates that the Flotilla met this burden by posting a sign warning of the risk of slipping on the launch ramp. Therefore, even if the Flotilla owed a duty to warn Michael of the slippery slope, the Flotilla met this burden.

### 3. Conclusion

■ We conclude that the Flotilla owed no duty to Michael to remove the algae, warn of the algae, or remove the vegetation on the approach. Mary's action for loss of consortium is based upon the theory of transferred negligence, whereby the defendant's duty to the injured spouse is transferred to the deprived spouse. *Helms v. Chicago Park District*, 258 Ill. App. 3d 675, 679 (1994). Because the Flotilla did not negligently cause Michael's injuries, the trial court correctly granted the Flotilla summary judgment on all of the claims brought by Michael and Mary.

For the preceding reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

HUTCHINSON and CALLUM, JJ., concur.