2022 IL App (2d) 210719-U
No. 2-21-0719
Order filed August 10, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| PAULETTE JURINA and MICHAEL E. JURINA, | ) ) ) | Appeal from the Circuit Court of De Kalb County |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 19-L-31 |
| WALMART, INC., | ) ) | Honorable Bradley J. Waller, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Jorgensen and Birkett concurred in the judgment.

**ORDER**

¶ 1   *Held*: Summary judgment for storeowner was proper where there was no dispute of material fact that plaintiff slipped on rainwater tracked into the store vestibule from a natural accumulation outside or that storeowner's policy of implementing safety measures to address hazardous accumulations of water in the vestibule created a duty to implement those measures on the day of plaintiff's fall.

¶ 2   Plaintiffs, Paulette Jurina and Michael E. Jurina, appeal from the summary judgment entered against them and in favor of defendant, Walmart, Inc., in the circuit court of De Kalb County. Plaintiffs contend that there were questions of material fact that precluded summary

judgment. Because there were no questions of material fact and defendant was entitled to judgment as a matter of law, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Plaintiffs filed a two-count complaint. Count I alleged that defendant's negligent maintenance of its De Kalb store caused Paulette to slip and sustain injury when she entered the store. Count II alleged that Paulette's husband, Michael, suffered a loss of consortium.

¶ 5     Defendant filed a motion for summary judgment on only the issue of liability. Defendant contended that it owed Paulette no duty of care because she slipped on rainwater tracked in from a natural accumulation outside. Defendant further asserted that, because it was entitled to judgment as a matter of law on Paulette's negligence claim, it was also entitled to judgment on Michael's derivative claim for loss of consortium.

¶ 6     In support of its motion for summary judgment, defendant submitted Paulette's discovery deposition. According to Paulette, in the late afternoon of June 19, 2017, she took her mother to an eye-doctor appointment. While they were at the eye doctor's, it began to rain hard. Following the appointment, Paulette drove her mother to the De Kalb Walmart to pick up some eye drops. When they arrived at the Walmart, it was still raining hard, so Paulette waited in the car about 15 minutes before entering the store.

¶ 7     The entrance to the store consisted of a set of automatic doors from the parking lot into a vestibule. A second set of doors led from the vestibule into the store.

¶ 8     Wearing sandals, Paulette entered the outer set of doors, dropped something into a waste container just inside the outer doors, and began walking toward the inner doors. She took a step or two and slipped and fell. She landed on her left side. After Paulette fell, an unknown customer helped her to her feet. Paulette's entire left side was wet.

¶ 9    Paulette admitted that, because it was raining, her feet were wet when she entered the vestibule.  There were no floor mats or carpeting on the floor of the vestibule.  She believed that rainwater caused her fall.  She did not see any broken bottles, cups, containers, boxes, or the like that could have caused her fall.

¶ 10    After getting up, Paulette entered the store to look for eye drops in the pharmacy area.  As she did so, a female store manager met her.  The store manager told her that she had learned that Paulette had fallen.  Paulette told the store manager that she was hurt but did not want an ambulance called.  At the request of another store employee, Paulette completed a store incident report.  The report, in Paulette's handwriting, stated that there were no floor mats down and the floor was wet from the rain.  The report further stated that, after Paulette got up, she saw an associate start putting mats down.

¶ 11    Defendant also submitted the discovery deposition of Sarah Wells, the store manager.  Wells was working at the De Kalb store on the date of the incident.  According to Wells, it had started raining approximately 5 to 15 minutes before Paulette fell.  Wells' duties included touring the store occasionally to check on conditions, but she did not recall anything unusual about the entrance to the store.  She also did not recall walking in the vestibule either before or after it started raining.  The store's practice was that, if it started raining, associates would put floor mats in the vestibules. In addition, if there was an excess accumulation of water that store personnel believed was hazardous, they would put up warning signs.

¶ 12    Wells first became aware of Paulette's fall when a "code white" was issued for the front of the store.  Wells arrived quickly at the vestibule but did not see any floor mats or warning signs in place.

¶ 13    Wells then located Paulette near the pharmacy.  When Wells asked Paulette if she had been in an incident, Paulette said that she had slipped and fallen in the vestibule.  According to Wells, Paulette declined medical attention.

¶ 14    At Wells's request, Paulette completed an incident report.  In the report, Paulette stated that the floor in the vestibule was wet from rainwater and that there were no mats down.  Paulette added that an associate began putting floor mats down after she got up.

¶ 15    According to Wells, although photographs of the vestibule taken shortly after Paulette fell showed floor mats in place, there were none there when Paulette fell.  There was no indication that Paulette slipped on anything other than tracked-in rainwater.  A still photo from a store video that recorded Paulette's fall showed no mats on the floor when Paulette fell.

¶ 16    When the trial court asked plaintiffs' counsel if there was any dispute that a store video showed that Paulette took one or two steps into the vestibule and slipped and fell, counsel said no. A still photo from that video shows Paulette falling a few steps into the vestibule.

¶ 17    In ruling on the motion for summary judgment, the trial court found that there was no question of material fact that Paulette slipped and fell on rainwater tracked in from a natural accumulation outside.  Accordingly, the court ruled that defendant did not owe Paulette a duty of reasonable care.  The court further ruled that the store policies regarding the placement of floor mats and warning signs did not create a duty to Paulette.  Thus, the court granted summary judgment in favor of defendant on the negligence claim in count I and the derivative loss-of-consortium claim in count II.  Plaintiffs then filed this timely appeal.

¶ 18                                II. ANALYSIS

¶ 19    On appeal, plaintiffs contend that summary judgment was improper because of material fact questions.  First, plaintiffs claim that there was a genuine issue of material fact as to whether

the water that Paulette slipped on was tracked in from a natural accumulation of rainwater outside. Second, plaintiffs contend that, because defendant had a store policy of placing floor mats and warning signs in the vestibule when rain caused a hazardous accumulation of water, there was a question of fact as to whether defendant had a duty to implement those measures on the day of the incident.

¶ 20    Summary judgment is proper where the pleadings, depositions, and admissions on file, together with the affidavits, if any, indicate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2020). The trial court must construe the evidentiary materials strictly against the movant and liberally in favor of the nonmovant. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113 (1995). Although a drastic means of disposing of litigation, summary judgment is an appropriate measure to expeditiously dispose of a suit when the moving party's right to the judgment is clear and free from doubt. *Gaston v. City of Danville*, 393 Ill. App. 3d 591, 601 (2009). We review *de novo* an order granting summary judgment. *Espinoza*, 165 Ill. 2d at 113.

¶ 21    A plaintiff bringing a negligence claim must prove that the defendant owed her a duty of care, the defendant breached that duty, and the breach was the proximate cause of her injury. *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 236 (2010). Summary judgment is proper for the defendant if the plaintiff fails to establish any of those elements. *Pavlik v. Wal-Mart Stores, Inc.*, 323 Ill. App. 3d 1060, 1063 (2001). The existence of a duty is a question of law for the court to decide. *Espinoza*, 165 Ill. 2d at 114. A plaintiff is not required to prove her case in response to a motion for summary judgment but must present evidentiary facts to support the elements of the cause of action. *Richardson v. Bond Drug Co. of Illinois*, 387 Ill. App. 3d 881, 885 (2009).

¶ 22    Property owners and business operators have a general duty to provide a reasonably safe means of ingress to and egress from their business. *Reed v. Galaxy Holdings, Inc*., 394 Ill. App. 3d 39, 42 (2009). However, "[u]nder the natural accumulation rule, a landowner or possessor of real property has no duty to remove natural accumulations of ice, snow, or water from its property." *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 227 (2010). By extension, property owners and business operators have no duty to remove the tracks or residue left inside the building by customers who have walked through natural accumulations of ice, snow, or water outside the building. *Reed*, 394 Ill. App. 3d at 42. "It is irrelevant whether a natural accumulation remains on the property for an 'unreasonable' length of time." *Reed*, 394 Ill. App. 3d at 42-43. Because owners and operators are not liable for failing to remove natural water accumulation, they also have no duty to warn of such a condition. *Reed*, 394 Ill. App. 3d at 43. However, owners and operators may be liable for injuries resulting from an artificial or unnatural accumulation or a natural condition aggravated by the owner or operator. *Reed*, 394 Ill. App. 3d at 43. Likewise, a court may hold an owner or operator liable for injuries resulting from tracked-in water if the plaintiff specifically alleged that the floor material was particularly slippery and dangerous when wet. *Reed*, 394 Ill. App. 3d at 43.

¶ 23    Here, plaintiffs failed to submit any evidence that would allow a fact finder to find (1) that the water in the vestibule was anything other than rainwater tracked in from a natural accumulation outside or (2) that defendant caused or aggravated the tracked-in accumulation of water. Paulette admitted in her discovery deposition that it was raining and she slipped on rainwater tracked into the vestibule. She further stated in the incident report that the floor was wet from rainwater and that she slipped on the wet tile. The still photo of Paulette falling also showed that there was nothing other than water on the floor where she fell. Paulette did not offer evidence that anything

else caused her to slip and fall. Nor did she submit any evidence that defendant aggravated the natural accumulation in any way or that the floor material contributed to the slippery condition. Because it was undisputed that Paulette slipped and fell on tracked-in rainwater from a natural accumulation outside, defendant did not owe her a duty of care. Thus, defendant was entitled to judgment as a matter of law.

¶ 24    Although Paulette contends that the store's policy regarding rainwater in the vestibule created a duty to either put down mats or warn her of the danger, we disagree. Reviewing courts have affirmed summary judgments for store owners in similar circumstances, holding as a matter of law that the store's safety policy for addressing tracked-in rainwater did not create a duty of care. For example, in *Reed,* the court held that, although the store had a practice of mopping and towel-drying the floor and placing cones and additional mats near the entrance on rainy days, it was not liable for failing to do so before the plaintiff slipped on tracked-in rainwater. *Reed*, 394 Ill. App. 3d at 46. Likewise, in *Lohan v. Walgreens Co.,* 140 Ill. App. 3d 171, 175 (1986), the court held that the store was not liable for the natural accumulation of water that caused the plaintiff's fall and had no duty to remove tracked-in water regardless of whether the store had rainy-day procedures. Similarly, in *Wilson v. Gorski's Food Fair*, 196 Ill. App. 3d 612, 615-66 (1990), the court held that despite a store's policy—to periodically mop rainwater and place a floor mat near the inside entrance to the store—the defendant did not owe the plaintiff any duty, because the evidence showed that the plaintiff slipped on tracked-in rainwater from outside. Relying on this well-established case law, we conclude that defendant's store policy of taking measures to mitigate the impact of naturally accumulating rainwater in the vestibule did not give rise to a duty of care to a customer, such as Paulette, who slipped on rainwater in the vestibule.

¶ 25     For the foregoing reasons, the trial court properly entered summary judgment for defendant on Paulette's negligence claim and Michael's derivative claim for loss of consortium.  See *Bonavia v. Rockford Flotilla 6-1, Inc.*, 348 Ill. App. 3d 286, 296 (2004).

¶ 26                                III. CONCLUSION

¶ 27     For the reasons stated, we affirm the judgment of the circuit court of De Kalb County.

¶ 28     Affirmed.